Good morning, Your Honors. Joseph Trojan for the appellant, and I'd like to reserve five minutes for rebuttal. This is actually an extraordinary case from a trademark stance because this is a case in which a jury awarded a $5 million verdict for willful trademark infringement against a company who owned incontestable federal trademark registrations to the mark. Well, they can award trademark infringement damages for violation of a state common law trademark that was senior to the federal mark, can't they? If that's accurate. I'm not saying that's the case, but if someone had a senior common law mark that predated the federal registration, couldn't they have a right to get damages for that? That's true, Your Honor. Isn't that really the issue here? That is the issue, and the reason why that makes it all the more critical why there was a violation of basic due process in how the trial was conducted, because on that exact issue, the court found a directed verdict on that issue. But did that after most of your witnesses had already testified? It occurred two days into the appellant's case in chief. The account that I have is something like 11 out of your 14 witnesses had testified before the judge initially granted that motion. Is that correct? I think it came from your opponent, but is that correct? I don't think it's a matter of the number of witnesses that testified. That's important to start with, because if that's the case, then at least those witnesses testified at a time when the directed verdict hadn't been entered, so there would have been no reason for you to hold back in examining those witnesses or presenting what evidence you had on the issue, which was at least temporarily taken out of the case by the directed verdict. Certainly before the verdict came, before the directed verdict was rendered, there would not be a reason not to present evidence on the issue. So for those witnesses at least, presumably whatever evidence might have come did come, which brings us to the remaining witnesses, and the issue there seems to me to be what effort was made to ask the court for permission to elicit that evidence later. It seems to me the judge made the usual inquiries about anything else, and there's the perfect opportunity to stand up and say, well, yes, Your Honor, we have this evidence which we didn't get a chance to bring in because of the directed verdict. We'd like to bring it in, and the court presumably says proceed. Was there anything like that? There was nothing in the record to indicate the trial counsel requested after his case had closed that he be permitted to reopen his case in chief to defend on the trademark issue. Did the judge reverse that ruling after the appellant's case had closed? That's correct. The case had closed? The case had – the appellant's case in chief had closed. It had been revert. It was – and as we said, it was granted on the – after the second day. There were still two and a half days of the appellant's case in chief. The appellant rested, and then after that, then the court reversed its directed verdict decision. And so – and so basically we rely upon Byrd, the Supreme Court case, that says basically the remedy here is a new  So in a – in an appellate setting, we're all used to what did you do to preserve an evidence? What did you do to make an offer of proof on a particular issue? Please show – show the court of appeal that somehow this was not harmless error, that some – that somebody didn't fail to do the right thing to preserve it for appeal. And in Byrd, that's what Byrd is saying. In this particular context, when a – when a plaintiff or a party – an appellant or a plaintiff or a plaintiff or a plaintiff or a plaintiff or a plaintiff or a plaintiff, there's no reason for them to be presenting evidence or making an offer of proof on a particular issue if – But there's a reason then after the court changes direction. After the court says, okay, I've changed my mind, there's a reason for someone to make a proffer of evidence or submit evidence. It's hard for me to understand arguments that evidence was excluded if evidence wasn't offered. Because you would not – I think that that's what Byrd is trying to get at, that basically if you're trial counsel, you're presenting your witnesses and you're presenting your testimony and arguments in a particular way to the jury. And if an issue's been removed from consideration, then the way in which you've – you're presenting your case is also altered. And so – Well, what – And that can't be remedied by simply going and saying, okay, now that my whole case has been shifted in order, now why don't you go put on a new case in chief or add to your case in chief in rebuttal? Because that's rebuttal. Even that argument apparently was not made to the district court. That's true. Trial counsel did not make that argument. And so I think at this point I would move on from this particular issue. The original directed verdict when it was granted was properly granted. This is a situation where a foreign corporation who does – did not sell in the United States set up a U.S. subsidiary in June of 1990. And it set up that subsidiary in order for that subsidiary to sell its products in the United States. It has a trading company, Netco, that actually did the selling through which it did the selling to the company in the U.S. Its subsidiary goes and registers the trademark rights. The parent company is fully aware of this because it starts putting an R in a circle on its products. So it's fully aware that its subsidiary has those trademark rights. It then continues business for five years. In 1995, it turns out that its subsidiary has a million dollar debt. And it doesn't want any part of that debt, but it wants it to be paid off because part of that debt is also owed. To whom? To Watec? To Watec Japan and to Netco. So Watec America owes Watec Japan a million dollars? That's correct. And part of that's owed to Netco, which is the intermediary. And this debt is for cameras that were – it's for goods or for something else? It's because the exchange rate, because the delay in making payments and because the dollar was weakening. So this amount owed on goods delivered? Yes. And it occurred because over a period of time on the exchange rate, there was this difference in the books between Watec Japan and Watec America. Did Watec America have to make payments in yen or in dollars? I do not believe there was anything in the record that specified that. So I can't answer that question. But if parties can hedge in currencies if they want to eliminate currency fluctuation risk, and if they don't do that, and they owe somebody money in dollars or in yen or in rubles or whatever. And when it comes due, they have to deliver normally the currency that's due. I don't think that that's an issue in dispute. The issue really here is that the parent corporation wanted to find a way to be paid because there was this million dollar debt. And its solution – it chose a solution. It chose to sell that subsidiary. And as a term of the condition of that, it would transfer the assets and the liability, and that they would sell it to a minority shareholder, Dr. Liu, and that Dr. Liu would ensure that the million dollars was paid, which he did over the next nine months. So at that point, they have sold the company, the subsidiary that owns the trademark rights. And so since the agreement did not make specific reference to the trademarks, the question becomes, was it transferred with it when all the assets and liabilities were sold? And the answer to that is that the trademark only goes with the goodwill of the company. And when you sell assets and liabilities, the law presumes that the goodwill went with the company. And so we have a situation where the goodwill was transferred, and since the goodwill has to go with the trademark, it's presumed that the trademark was also sold. Was there a disputed issue before the jury as to whether Watec Japan knew of the trademark registration? Was that a disputed issue before the jury is my question? Was the evidence all on one side, or were there disputes in the testimony about whether Watec Japan knew about the federal trademark registration of Watec and Watt by Watec America? Actually, that goes to the issue of fraud, which was actually an issue excluded, that somehow Watec and Watt, Dr. Liu had gone and registered these trademarks behind their back, which was and committed fraud on the parent company, and that was found not to be true. He was president of the subsidiary, Watec America. But my question, is there an answer to my question as to what the jury had on that issue? I know the jury was aware that... I'm not interested in evidence that was excluded for any reason. I know that it is in the record that the notice to put the R in a circle on the products was sent to the parent company, and so they were aware that that occurred in between. The registrations were filed in, I believe, 92 and 93. They would have issued within a year of that. So sometime during that period when they still owned the company, they were advised to the fact that the registrations had issued, and they should put R in a circle on there. So they had to have been aware of the registrations for that reason. Prior to the transaction you talked about with the million dollars of debt being cleared up, Watec Japan owned a majority of the shares in Watec America. Is that correct? Right. Who actually managed Watec America? Dr. Liu managed Watec America. And that includes the time when he was a minority owner in Watec America. That is correct. So presumably he was the person or his agents would have been the persons to communicate with Watec Japan concerning the registration and the requirement to put the little circle R onto the name in the future. Was the evidence concerning that communication put before the jury? I believe so. It's in the reply brief. There is a reference to that notice, and there's a citation to the record in the reply brief for that specific point. Well, what is the error on the part of the district court that you are now challenging? Well, the error is that it's clear that Watec America owned the trademark rights, and Dr. Liu purchased Watec America in 1995. Federal trademark right, I thought you were saying. That's correct. Why would that exclude a state? But then that becomes the issue that there was. By reversing it, the directed verdict was correct. There should have been a directed verdict on the issue that there was no trademark infringement on the issue of whether Watec America could have infringed those common law rights. And why would that be, though, if Watec Japan had sold in the United States and put their marks in commerce in all 50 states, if they had, before Watec America registered the names for a federal trademark, then why wouldn't they have a common law mark? There was zero evidence in the record that Watec Japan sold in all 50 states. There was limited evidence in the record that they sold in some states small quantities, maybe over a couple of years they may have sold on the order of, it was very unclear in the record whether it was a few hundred dollars or up to $6,000 in merchandise. And so the... If Watec America is their distributor, wouldn't the sales by Watec America be something that would also create a common law mark for Watec Japan? Absolutely not, because if a company chooses to do business through its subsidiary and place those trademark rights in the subsidiary, because the initial sales came before the trademark registrations. That's correct, but that would only trump the trademark registration in the states in which it was shown that there was substantial sales, substantial and continuous sales. As I recall, the directed verdict was based on the continuous portion, that is that the district judge at first at least declined to treat the sales through Watec America or by Watec America as being for the account of or the continuous use of Watec Japan and then subsequently decided, or she decided, and the reason for the change of mind was that, well, I guess the sales made by Watec America constitute use by Watec Japan too, so I'm going to change my mind and take back the directed verdict. Was it the continuous part that turned the judges? The continuous part depends upon this oral licensing agreement between a parent and its subsidiary and then after 1995 with Dr. Lu. Okay, but the jury could find that, I mean, you can have an oral agreement, so, I mean, it could be disputed, but as I understand it, the jury heard from Dr. Lu and from some executive of Watec Japan and the jury weighed the evidence and made a decision. And over, we have a claim of an oral agreement renewed every year in which there was not a single fax, not a single memo, not a single email. Okay, but was there testimony from some executive at Watec Japan that said, we had an oral agreement, we renewed it every year? In other words, your argument that there wasn't a fax or a memo seems to go to Watec if there was testimony. It's up to a jury to weigh it. You have under four minutes. Right, I have three and a half. We're talking about a complete absence of any evidence whatsoever with respect to an oral agreement, other than... No, I'm saying that when the only witness making any kind of such claim which contradicts his own deposition testimony and there's not a single document for such a long period of time, then yes, you can hold that there's simply insufficient evidence. Okay, thank you. May it please the Court, Orlando Cabandi with Henley and Grossfeld on behalf of Watec Company Limited in Genlock, which I'll refer to as Watec Japan. A few issues that I'd like to address that were raised by Mr. Trojan. The court in rendering its reversal of the JMOL provided ample opportunity to the Lew defendants to make whatever accommodations were necessary to present evidence. And in fact, the record speaks what efforts I went to to make sure that I had an opportunity to present witnesses on our rebuttal case. With respect to the trademark issues, the jury was specifically charged, and if you look at the jury's findings, it was charged to make specific findings on whether trademark infringement existed. Those specific findings and the evidence that they had to find, and this is a jury verdict form that the Lew defendants had to prove and their counsel had to prove, the jury specifically had to find any evidence whether the parties entered a distribution agreement which would control their respective rights related to the trademarks, that a trademark license existed, that that trademark license continued after the purchase of the shares by Dr. Lew, and that the continuing use of those marks after the agreement was breached, whether that constituted trademark infringement. Those were specific findings that the jury found, and those were findings that the court was impressed about in not reversing itself on the JMOL. If the court has any more questions, I can submit. One question. In your brief, in talking about the Federal registrations, you make the point that the applicants did not disclose Watex Japan's ownership rights in the mark in the application, and I understand it's contested as to whether who had what rights in the United States at what time, but let me pose the question, what if the disclosure had been made, what would have been different about the Federal registration? I believe the Trademark and Patent Office, and there's several opinions that are not in the brief, would have to make an inquiry as to who was the actual owner of the trademarks. In this case, what Mr. Lew failed to disclose was that there was an agreement between the parties which controlled the respective rights in the trademarks. In this case, Watex Japan had sold these products put into the stream of commerce, and by the way, there was evidence in the record that prior to the formation of Watex America, several thousands of these cameras had been sold. There's also evidence in the record, and Mr. Lew did not disclose this in making his registrations, that he believed prior to the registration it was a milestone event that these trademark cameras had gained national prominence through the sale of these cameras to the FBI. But you're putting it a lot narrower. At the time the registration is made, Watex America is majority owned by Watex Japan, and so I don't know that there's anything exceptional about the trademark application. I'm just trying to figure out what difference would there have been with the Federal registration. I believe there would have been further inquiry, and the burden would have been on the Lew defendants to identify what interest this other entity had and whether the trademarks could actually issue to an entity that did not have actual rights to these trademarks. That's the inquiry that was denied. But that still wouldn't necessarily affect a common law trademark. No, no, no, no. We own the rights. They knew we owned the rights. That's an admission under the agreement. That's an admission he made to all the customers. I don't have other questions. Any further questions? Thank you, Your Honor. The evidence in the record of several sales of several thousand cameras, there's no best evidence of that at all. There's no they have a documentation on appearing at a trade show. But other than as far as the number of sales, that was purely through the oral testimony of the President. There wasn't any evidence indicating, and even through his testimony, he once again admits that he did not sell throughout the entire United States. It's a simple fact that even those common law rights could not trump the entire Federal registration in all 50 states. With respect to who owned the rights, if the President of a subsidiary company goes and registers the rights of his of the that's his duty. He's not committing any kind of fraud against the parent company by going and advising and going and registering the rights for the subsidiary. There's no disagreement that he's saying should have been presented to the trademark office as part of the fraud on the trademark office claim that was dismissed. That was not a part of this case. They're going back and having to rely upon an argument that was dismissed from the case. I think we understand. Thank you. The matter just argued is submitted for decision. And for this segment of the this segment of the calendar is concluded and the court will take a brief recess. All rise. We will reconvene at approximately 11 o'clock. Thank you. Thank you. I just don't want you to leave. I'll give you the box so he can take it. So you can hold on. You think you'll be able to grab it. I guess as long as you grab it. You've got to take it to the conference room. I don't know if he'll take this himself again. My only question. Let's keep your eye out for the box. Takes it then. You may. He's quick. No, no. Thank you.
judges: Schroeder, Gould, Clifton